# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICH AUREL,                            *

Plaintiff,                            *

v.                                    *        Civil Action No. ELH-19-0185

RICH HALLWORTH,                       *
JOHN VANMOL,
KEN FIELDS,                           *
CORIZON PROVIDES HEALTHCARE,
HOLLY PIERCE, NPLP 35226              *
ASRESAHEGN GETACHEW, M.D.,
WILLIAM BEEMAN, RHR 116633, and       *
ALL THE NBCI NURSES,
                                      *
Defendants.

                                      *
                                     ***

## MEMORANDUM OPINION

Plaintiff Mich Aurel, who is self-represented, is a Maryland prisoner confined at North Branch Correctional Institution ("NBCI").  He filed a civil rights action against multiple defendants, pursuant to 42 U.S.C. § 1983, as supplemented, alleging that defendants provided inadequate medical care.  ECF 1; ECF 33; ECF 43.

Defendants Holly Pierce, N.P.; Asresahegn Getachew, M.D.; William Beeman, R.N.; and "all NBCI nurses" have moved to dismiss or for summary judgment (ECF 22), supported by a memorandum.  ECF 22-2.  The motion concerns the period of time prior to January 1, 2019, when Wexford Health Sources, Inc. ("Wexford") was the provider of health care at NBCI.  ECF 22 at 1 n.1.  Therefore, although Wexford is not a named defendant, I shall refer to this motion as the "Wexford Motion," and I shall refer to the individual defendants as the "Wexford Defendants."

Defendants Corizon Health, Inc. ("Corizon," misnamed by plaintiff as "Corizon Provides Health Care"); Holly Pierce, N.P.; Asreshagen Getachew, M.D.; William Beeman, R.N.; and Rich Hallworth also filed a motion to dismiss or for summary judgment (ECF 30), supported by a legal memorandum (ECF 30-1). They have submitted numerous exhibits, including over 350 pages of plaintiff's medical records. Their motion concerns the period beginning January 1, 2019, when Corizon became the health care provider at NBCI. Therefore, I shall refer to this motion as the "Corizon Motion" and I shall refer to the individual defendants and Corizon collectively as the "Corizon Defendants."

As is apparent from the outline above, certain individual defendants have worked for both Wexford and Corizon. Thus, they have moved in both motions.

Defendants John Vanmol, Ken Fields, and the "NBCI Nurses" were never served. And, Vanmol and Fields have not appeared.

Aurel has filed numerous submissions. *See*, *e.g.* ECF 7; ECF 11; ECF 18; ECF 20. He has also filed an opposition to defendants' motions. ECF 36. And, Aurel has filed a motion for a temporary restraining order. ECF 18. He asks defendants to stay "at least five hundred feet away from plaintiff at all times" and seeks a transfer to another institution. *Id.* at 1. Defendants have filed replies to Aurel's opposition ECF 34; ECF 37.[1]

---

[1] Corizon, Pierce, Getachew, Beeman, and Hallworth moved to strike subsequent submissions to the extent they are surreplies. ECF 40. Surreply memoranda are not permitted unless otherwise ordered by the court, *see* Local R. 105.2(a)(2018), and are generally disfavored in this District. *See Chubb & Son v. C & C Complete Servs.*, LLC, 919 F. Supp. 2d 666, 679 (D. Md. 2013). However, they may be permitted "when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply." *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009). Although this exception is not applicable here, to the extent any submission is a surreply, I shall deny the motion to strike (ECF 40).

The motions are ripe for disposition.  Upon review of the record, exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2018). For the reasons that follow, the suit shall be dismissed as to defendants Hallworth, Vanmol, Fields, and the NBCI Nurses.  I shall grant the Wexford Motion and the Corizon Motion.  And, I shall deny Aurel's motion for a temporary restraining order.

## I.  Background

### A.  Procedural History

Aurel, a frequent litigator in this Court,[2] filed suit in this case on January 18, 2019. ECF 1.  Because defendant Hallworth is the first named defendant in this suit, and to distinguish this case from many other cases filed by Aurel, I shall refer to this case as the "*Hallworth*" case.

On February 25, 2019, I stayed the *Hallworth* case, pending resolution of *Aurel v. Pierce, et al.*, Civil Action No. ELH-18-2463 (hereinafter, "*Pierce*").  I did so because the cases appeared to involve similar issues and resolution of *Pierce* might inform the resolution of this action.  *See Hallworth*, ECF 8.

Aurel has a significant medical history.  His various medical conditions and illnesses, both real and perceived, have been addressed in several prior lawsuits. *See*, *e.g.*, *Aurel v. Wexford, et al.*, Civil Action ELH-15-1127, consolidated with ELH-15-1797 (granting summary judgment to medical defendants; complaints of abdominal, throat and chest pain, coughing, blurred vision, vomiting, blood in stool, constipation, weakness, ear pain, cancer of

---

[2] Aurel has filed more than 35 civil cases in this Court.  *See*, *e.g.*, ELH-17-335, ECF 3, n.2 (listing cases as of February 8, 2017); ELH-17-1201; ELH-18-1251; ELH-18-2463.  Most of the cases have been assigned to me.

the throat, stomach, pancreas, gallbladder, eye and liver); *Aurel v. Wexford, et al.,* Civil Action ELH-16-1293 (granting summary judgment to medical defendants; complaints of lower back and head pain stemming from 2009 fall, destruction of sick call requests, and denial of back brace); *Aurel v. Wexford, et al.,* Civil Action ELH-18-1251 (granting summary judgment to medical defendants; complaints of lower back pain, abdominal pain, throat pain, tongue infection, thyroid, liver, prostate and colon cancers, gastrointestinal problems, including constipation, ulcers and blood in stool, and hepatitis A & B infection).

In *Pierce,* ELH-18-2463, Aurel sued Wexford and Holly Pierce.  Pierce is also a defendant in *Hallworth*.  In *Pierce*, I issued a 30-page Memorandum Opinion (ECF 30) and Order on June 4, 2019 (ECF 31), granting the motion to dismiss filed by Wexford and the motion for summary judgment filed by Pierce.

*Pierce* involved Aurel's complaints of abdominal pain; constipation; a colon infection; blood in stool; an ulcer; infections of the kidneys, stomach, liver, blood, urinary tract, pancreas and large and small intestines; pain in the right hip, right shoulder, and lower back; inability to urinate; prostate and thyroid cancer; liver pain; a liver cyst; throat, neck and chest pain; hoarseness; hypothyroidism; shortness of breath; swollen lymph nodes; and nerve pain. Some of these ailments were not supported by the medical evidence.

Dr. Getachew, a defendant in *Hallworth* but not in *Pierce*, provided an Affidavit in *Pierce* on behalf of the defendants.  *See id.*, ECF 15-5.  It was dated November 21, 2018.  *Id.* at 8.  He referenced plaintiff's "history of incorrectly diagnosing himself with various medical ailments," such as prostate, thyroid, throat, and colon cancer.  *Id.* ¶ 5.  He also noted Aurel's

medical history of back and hip pain, hypothyroidism, asthma, constipation, hypertrophy of prostate, cough,  hyperlipidemia, and esophageal reflux.  *Id.* ¶ 4.

Then, on August 7, 2019, the Court lifted the stay in the instant case.  *See Hallworth*, ECF 10.  Additionally, the Court consolidated this case with another case, *Aurel v. Corizon Health Services, Inc., et al.*, ELH-19-2253 (hereinafter, the "*Corizon* case"), because the two matters appeared closely connected.  *See Hallworth*, ECF 10; ECF 43.[3]

As indicated, Wexford provided medical services to inmates at NBCI until January 1, 2019.  But, Wexford is not named here as a defendant.  On January 1, 2019, Corizon became the medical provider at NBCI.  The defense motions pertain to claims arising before January 1, 2019, when Wexford was the provider, and as of January 1, 2019, when Corizon became the provider.

## B. Aurel's Allegations

In this consolidated action, Aurel alleges that defendants have denied him adequate medical treatment for numerous illnesses and health conditions, as follows: pain in his right lower back, right shoulder, right side, liver, abdomen; nerve damage; difficulty swallowing; throat and tongue infections; hoarseness; lumps in his neck; numbness on the right side; constipation; blood in stool; ulcers; crohne's disease or colon cancer; inability to urinate; hypertrophy and enlarged prostate; prostate cancer; hyperthyroidism with dry skin and itching.  *Hallworth*, ECF 1 at 3-7; ECF 43 at 3.  Most of these same medical complaints were

---

[3] The Complaint filed in the *Corizon case*, ELH-19-2253, consolidated with *Hallworth*, ELH-19-0185, was not docketed as a supplement to the Complaint in *Hallworth* until August 12, 2020. ECF 43.  Thereafter, defendants Corizon, Pierce, Getachew, Beeman, and Hallworth filed a joint response in opposition to plaintiff's supplement, apparently not realizing it was simply a delayed docketing of the Complaint from the consolidated case.  ECF 47.

recently addressed in *Pierce,* as noted above. The conditions that were not addressed in *Pierce* are hypertrophy and enlarged prostate.

Aurel also states that he is periodically denied medications that are prescribed to him, and he complains that his requests for particular pain medications have been denied.  ECF 1 at 4; ECF 43 at 3-4. Additionally, Aurel states that his sick call slips are being ignored and destroyed by defendants. ECF 1; ECF 43 at 3. Aurel seeks medication for years to come, asks to see a medical specialist, and seeks compensatory and punitive damages. ECF 1; ECF 43.

### C.  Wexford Motion

In support of the Wexford Motion, the Wexford Defendants provide Aurel's medication history (ECF 44-2) and a detailed chart of Aurel's prior litigation as well as the medical issues he has raised. ECF 22 at 4-5. They also incorporate by reference the facts and arguments set forth in the Corizon Motion (ECF 30).  *See* ECF 34 at 3.

The Wexford Defendants contend that they are entitled to dismissal of most of Aurel's claims based on the doctrine of res judicata.  In this regard, they point to Aurel's prior litigation against Wexford and its employees regarding the same medical issues; the same health care; and the same medication complaints.  The claims not previously litigated concern destruction of sick call slips; lack of treatment for hypertrophy of the prostate, difficulty swallowing, and a limp; and the need for a medical mattress.  In addition, they contend that they are entitled to dismissal for failure to state a claim.

According to the Wexford Defendants, Aurel has failed to identify by name those who are allegedly responsible for destroying sick call slips.  They also assert that he has not suffered harm as a result of such conduct.  ECF 22-2 at 9.   As to medical matters, Aurel

suffers from benign prostatic hyperplasia, involving an enlarged prostate gland that is not cancerous, and they assert that Aurel fails to connect this condition to any wrongdoing on the part of the Wexford Defendants. *Id.* at 9-10.

In addition, the Wexford Defendants contend that Aurel has previously litigated allegations of denial of treatment for throat and pain infections, and his claim of difficulty swallowing is the same as the claim that was previously addressed. *Id.* at 10. Moreover, the need for a mattress and treatment for a limp are related to previously addressed claims of nerve, leg, and back pain. *Id.*

According to the Wexford Defendants, the only remaining claim requiring evaluation is Aurel's complaint that his Miralax and Synthroid prescriptions were discontinued. They submit medication records from August 2018 through January 2019 that counter Aurel's allegations and indicate that throughout this period he was provided Miralax and Synthroid and, on one occasion, he failed to pick up his prescription for Synthroid. ECF 22-2 at 10-11; ECF 44-2.

### D. Corizon Motion

The Corizon Defendants contend they are entitled to dismissal of the suit for failure to state a claim, or, alternatively, summary judgment. In their view, the record establishes that they did not violate plaintiff's rights under the Eighth Amendment. ECF 30 at 1.

In support of the Corizon Motion, the Corizon Defendants provide the declarations of Asresahegn Getachew, M.D., a licensed physician in Maryland and a Corizon Regional Medical Director (ECF 30-5); Holly Pierce, a Nurse Practitioner employed by Corizon at NBCI (ECF 30-6); and William Beeman, R.N., Assistant Director of Nursing at NBCI (ECF 30-7), together with

Aurel's verified medical records (ECF 30-3). The medical records submitted date to when Wexford was the medical provider and are referenced in the declarations. ECF 30-3, ECF 30-5, ECF 30-6.

Dr. Getachew submitted his Declaration in this case in November 2019, addressing Aurel's medical conditions and complaints. ECF 30-5. At the time, Aurel was 54 years of age. *Id.* ¶ 5. The Declaration is fifteen pages in length and is replete with references to Aurel's interactions with the health care providers at NBCI for a variety of ailments. Dr. Getachew also reviewed plaintiff's various medical conditions.

According to Dr. Getachew, Aurel has been diagnosed with hypothyroidism. *Id.* ¶ 5(a). Dr. Getachew describes hypothyroidism as a condition where the thyroid gland produces insufficient hormones. It is a benign condition controlled by replacing the missing hormone with the medication Synthroid ("levothyroxine"), which has been prescribed to Aurel. *Id.* ¶¶ 5(a), 9; ECF 30-3 at 84.

Hypothyroidism can cause dry skin that medication compliance and over-the-counter lotion can address. ECF 30-5, ¶ 5(a). Aurel is regularly monitored to assure proper medication dosage. *Id.* Getachew opines that Aurel is not always medication compliant. Of relevance, multiple physical examinations have confirmed that Aurel does not have thyroid cancer. *Id.* ¶ 11.

Further, Getachew states that Aurel is receiving treatment for constipation, and has been evaluated by a GI specialist. *Id.* ¶ 5(b). Aurel has been diagnosed with gastroesophageal reflux disease ("GERD"), a condition where stomach acid can enter the esophagus and cause abdominal pain, difficulty swallowing, and chest pain. *Id.* ¶ 5(d). Aurel's complaints of difficulty swallowing may relate to his GERD. *Id.* ¶ 34. As the GI specialist recommended, Aurel is being

treated with Prilosec, a proton pump inhibitor, and also educated on behavioral changes regarding eating habits. *Id.* ¶¶ 5(d), 37.

Aurel was referred to a GI specialist on July 11, 2018, after his stool tested positive for blood. *Id.* ¶ 7. Dr. Getachew evaluated plaintiff on August 7, 2018. *Id.* ¶ 8. He was provided with several medications for pain management. *Id.* Also on August 7, 2018, Dr. Getachew advised Aurel that recent imaging revealed a liver cyst, but there was no indication of cancer. *Id.* ¶ 9; *see also id.* ¶ 12. As a precaution, an abdominal ultrasound was to be performed in approximately six months and to be repeated every six months. *Id.* ¶ 9; *see* ECF 30-3 at 84.

On December 24, 2018, Aurel had a GI consult and the medication Miralax was recommended, along with a high fiber diet. The GI opined that blood with bowel movements is likely caused from hemorrhoids, which are usually benign, and he planned lab work for various conditions. However, there was no indication that Aurel has colon cancer. ECF 30-5, ¶ ¶ 5(b), 18, 35.

In addition, Aurel has been diagnosed with Benign Hypertrophy of the Prostate ("BPH"). *Id.* ¶ 5(c). Getachew describes this as an enlarged prostate, which is a "regular occurrence as a man ages." *Id.* It is a harmless condition unless the enlarged prostate interferes with urination. Aurel has refused physical exams by medical providers that would allow this assessment. But, Aurel has been prescribed medication for this condition and his PSA level is "regularly monitored." *Id.* Aurel was seen by a GI specialist who did not note any issues as part of a rectal exam. And, "there is no indication that he has prostate cancer." *Id.*

In addition, Aurel suffers from chronic back pain. *Id.* ¶ 6(e). Getachew states that Aurel has osteoarthritis and degeneration in his spine. Plaintiff has been evaluated by a specialist and receives medication. *Id.*

On July 5, 2018, Aurel had an MRI of his lumbar and cervical spine. *Id.* ¶ 6; ECF 30-2 at 226-27, 229-30, 347-50. The MRI revealed osteoarthritis, but did not indicate an "acute condition requiring immediate intervention." *Id.* On July 27, 2018, Aurel was referred to an orthopedist for back pain. *Id.* ¶ 7.

Aurel was evaluated by Dr. Carls, an orthopedist, on November 2, 2018, because Aurel reported that his symptoms "had become more severe . . . ." *Id.* ¶ 16. Dr. Carls recommended a referral to a spine surgeon for evaluation. *Id.* Aurel was wearing a back brace at this appointment. *Id.* On November 20, 2018, Aurel was referred for a neurology consult based on the recommendation of the orthopedist. *Id.* ¶ 17.

On March 20, 2019, Aurel had a neurosurgical consult at the University of Maryland Neurosurgery Clinic. *Id.* ¶ 24. The physician, Dr. Han, noted the "extensive diagnostic imaging and evaluation" Aurel had previously received and reviewed the MRI from November 2018. Dr. Hann recommended a CT scan of plaintiff's cervical and lumbar spine, without contrast; EMG/NCS studies of the right upper and lower extremities; a trial of the medication Gabapentin; and then a return to the clinic for further evaluation.[4]

In response to Aurel's belief that he has conditions such as liver cancer, colon cancer, kidney issues, Crohn's disease, and ulcers, he has received multiple examinations, diagnostic imaging exams, and lab work that have ruled out indications of cancer. Also, lab work indicates Aurel's kidneys continue to function well. *See*, *e.g.*, *id.* ¶ 37.

---

[4] Electromyography (EMG) and Nerve Conduction Studies (NCS) are used to measure measure whether the muscle is healthy or affected by a disease of the muscle of nerve. https://www.hopkinsmyositis.org/unique/diagnosis-myositis/tests/emg-ncs/ (last visited 8/19/20.)

Gabapentin is sold under the brand name Neurontin. https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011 (last visited 8/21/20).

Aurel complains that he does not always receive his medications.  Both Pierce and Getachew responded to these allegations in their declarations.  *See* ECF 30-5; ECF 30-6.  The records reflect medical appointments with Aurel at which medication requests, prescriptions, and compliance were discussed.

Dr. Getachew prescribed multiple pain medications on August 7, 2018, including Baclofen (muscle relaxer); Nortriptyline (a tricyclic antidepressant used for chronic pain); Effexor (used for neuralgia); Mobic (nonsteroidal anti-inflammatory); and Capsaicin (used topically).  ECF 30-5, ¶ 8.  Aurel requested two additional pain medications that Getachew did not provide. Instead, Getachew provided instruction on exercising to improve flexibility and strength.  *Id*.

On January 20, 2019, Aurel requested a prescription for Baclofen, as his prescription had expired on October 10, 2018.  Aurel had previously reported to the orthopedist that Baclofen did not help, and he was instead referred to the provider for evaluation. *Id.* ¶ 19; ECF 30-3 at 53.

Pierce evaluated Aurel on January 25, 2019.  ECF 30-5, ¶ 20.  She denied his request for Baclofen, a prescription for Tylenol #3, and an increase in his dose of Nortriptyline.  *Id.*  Pierce did not order Baclofen or Tylenol #3 as Baclofen is "subject to abuse" and Tylenol #3 is an opioid, not indicated for chronic pain.  *Id*. ¶ 20(b).  She noted "concerning behavior," including an exaggerated gait, animated body language, and inappropriate laughing. *Id.*

On February 11, 2019, Pierce saw plaintiff for constipation.  *Id.* ¶ 21.  And, on March 4, 2019, Aurel was again evaluated by Pierce.  *Id.* ¶ 22.  He had numerous complaints.  *Id.*  Plaintiff believed he had "aggressive liver cancer," *id.* ¶ 22(a), but an ultrasound showed hepatic steatosis and a cyst, consistent with a CT in 2015.  *Id.*   He also believed he had a stomach infection.  *Id.*  Moreover, he believed his kidneys were "shutting down," but lab work did not reflect a problem.

*Id.* ¶ 6(b).

Plaintiff requested something "stronger for his pain." *Id.* ¶ 22(c).  But, lab worked showed he was not taking his prescribed medications of Nortriptyline or Effexor, and they were discontinued, along with Mobic. *Id.*

In her Declaration (ECF 30-6), Pierce notes that Aurel has "'self diagnosed'" with multiple illnesses and continues to place numerous sick calls each week regarding the same ailments. *Id.* ¶ 14.  He is being seen monthly for repetitive sick calls. *Id.*  These will be addressed through chronic care. *Id.*  Aurel will also work with the "mental health team." *Id.*

## II.  Standards of Review

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir.

2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 573; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). But, the Supreme Court has explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted; alteration in *Twombly*).

Moreover, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Moreover, federal pleading rules "do not countenance dismissal of

a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780

F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines*, 822 F.3d at 167. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.* (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, U.S. ,

138 S. Ct. 558 (2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).  *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Here, defendants argue that Aurel's claims do not survive analysis under Rule 12(b)(6). Defendants also provide documentary evidence suggesting that Aurel nonetheless has received constitutionally adequate treatment for his various medical conditions. These documents are not intrinsic to Aurel's Complaint, however. Therefore, they may only be considered in the context of a motion for summary judgment.

**B.**

As noted, the motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005). Further, Aurel was provided notification by the Clerk of Defendants' dispositive filings and the opportunity to reply with exhibits and declarations. (ECF Nos. 24, 31.)

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,

637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Aurel has not filed an affidavit under Rule 56(d), nor has he objected to defendants' motions under principles of summary judgment. Further, defendants have provided Aurel with extensive and updated medical records filed with the court. Thus, the Court is satisfied that it

is appropriate to address defendants' motions, in part, as motions for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625,

628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III.  Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).   However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *see Safar v. Tinsley*, 859 F.3d 241, 245 (4th Cir. 2017).

In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).  But, to seek redress under § 1983, it is not enough merely to allege a violation of federal law; a violation of a federal right is required. *Carey v. Throwe*, 957 F.3d 468, 479 (4th Cir. 2020).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safer*, 859 F.3d at 245.  To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v.*

*Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement—and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Of import here, § 1983 liability may extend to a private entity operating under color of state law, including private prison health care providers. *See, e.g.*, *West*, 487 U.S. at 49; *Polk*, 454 U.S. at 320; *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Thus, Corizon may be subject to suit under § 1983.[5] *See Rodriguez*, 338 F.3d at 355 (observing that principles of § 1983 municipal liability apply to a private corporation acting under color of state law).

Notably, § 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show

---

[5] As noted, plaintiff did not sue Wexford.

that the official acted personally to deprive the plaintiff of his rights).  In other words, there is no respondeat superior liability under § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Therefore, liability based on respondeat superior does not apply to a § 1983 action.  *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Tatarsky*, ___ F.3d ___, 2020 WL _____, at *____, (slip op. at 22) (4th Cir. Aug. 20, 2020).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1)  That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## IV.  Discussion

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56.  The Wexford Defendants argue (1)  all but two of Aurel's claims are

barred by res judicata; (2)  Aurel fails to state a claim as to the destruction of sick call slips; and (3) defendants were not deliberately indifferent to a serious medical need regarding the remaining allegations.  ECF 22.  The Corizon Defendants argue (1) Aurel fails to state a claim; and (2) the Corizon Defendants were not deliberately indifferent to a serious medical need. ECF 30.

## A.

In the caption of his Complaint, Aurel names Vanmol, Fields, and the NBCI Nurses as defendants.  But, there are no allegations in the suit pertaining to these individuals.  Nor is there any indication that service was ever effected on them, in accordance with Fed. R. Civ. P. 4. Therefore, I shall dismiss the suit as to all of them, under both Rule 4 and Rule 12(b)(6).

Aurel also names Rich Hallworth as a defendant.  Yet, he provides no allegations about him.  According to Corizon, Hallworth is a former CEO of Corizon, but has not served in that position since January 1, 2019.  ECF 30-1 at 3-4.  Plaintiff did not respond to Corizon's motion to dismiss Hallworth from this action, based on the absence of allegations that Hallworth was involved in plaintiff's medical care and the fact that there is no respondeat superior liability under 42 U.S.C. § 1983.  ECF 30-1 at 18; ECF 37 at 9.  I shall dismiss the suit as to Hallworth, for failure to state a claim.

In addition, Aurel names Beeman as a defendant.  But, he fails to include any allegations regarding Beeman.  Aurel fails to respond to this point in Corizon's Motion.  ECF 37 at 9-10. Therefore, I shall dismiss the suit as to Beeman, for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**

On June 4, 2019, in *Pierce*, *supra*, the Court granted Wexford's motion to dismiss and Pierce's motion for summary judgment with regard to Aurel's Eighth Amendment claims concerning medical care.  And, Aurel filed numerous cases prior to *Pierce*, alleging Eighth Amendment violations for a host of medical claims.  At issue here is the defendants' treatment of Aurel for a multitude of medical conditions, most of which were reviewed in the prior actions. It is against this backdrop that the Court now reviews the pending motions.

As indicated, this action was stayed pending the outcome of *Pierce*, because of the similarity of issues.  In *Pierce*, I concluded that Aurel's Eighth Amendment right to adequate medical care was not violated in regard to an extensive list of medical ailments.  *Pierce*, ECF 30; ECF 31.  The Wexford Defendants now move to dismiss on the basis of res judicata, arguing that Aurel is precluded from bringing claims regarding the same medical issues as alleged in *Pierce*. *Hallworth*, ECF 22; ECF 22-2.

Res judicata, also known as claim preclusion, is a legal doctrine that promotes judicial efficiency and the finality of decisions.  *In re Microsoft Corp Antitrust Litigation*, 355 F.3d 322, 325 (4th Cir. 2004).  Under the doctrine of res judicata, "a final judgment on the merits" in an earlier action precludes the parties or their privies from relitigating claims that were raised or that could have been raised based on the same cause of action.  *Montana v. United States*, 440 U.S. 147, 153 (1979); *see SAS Inst., Inc. v. World Programming Ltd.*, 847 F.3d 370, 378 (4th Cir. 2017); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008).  Res judicata applies when there is: (1) a final judgment on the merits in a prior lawsuit; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or their privies in the two suits.  *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004).

The doctrine is intended to preclude parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153-54.  At bottom, res judicata is a "'practical' doctrine" that asks "whether the party has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst.*, 847 F.3d at 378 (citation omitted).  The doctrine has manifest benefits; it protects litigants from vexatious litigation, conserves judicial resources, promotes efficiency, and minimizes the risk of inconsistent judgments.  *See Montana*, 440 U.S. at 153-54; *SAS Inst.*, 847 F.3d 3at 378; *Laurel Sand & Gravel*, 519 F.3d at 161-62.

Res judicata is not restricted to claims actually adjudicated in the prior litigation, however.  It also bars claims that could have been brought.  The Fourth Circuit has said:  "Not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Peugeot Motors of America, Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989).  Notably, "[t]he rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 Fed.Appx. 256, 265 (4th Cir. 2008)).

A cause of action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *see Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013) ("[W]e follow the 'transactional' approach when considering whether causes of action are identical:  'As long as the second suit 'arises out of the

same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'" (Citation omitted)); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996).

A party is "in privity for purposes of res judicata where he is "'so identified in interest with a party to former litigation that he represents the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (citation omitted). Moreover, "[p]rivity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants." *Kayzakian v. Buck*, 865 F.2d 1258 (Table), at *2 (4th Cir. 1988) (per curiam) (citing *Mears v. Town of Oxford, Md.*, 762 F.2d 368, 371 n.3 (4th Cir. 1985)).

In other words, privity attaches where the interests of the parties to a given lawsuit align. *Jones v. S.E.C.*, 115 F.3d 1173, 1181 (4th Cir. 1997). Holly Pierce is named as a defendant in both cases. Wexford was named in *Pierce*, not in *Hallworth*. But, Wexford's health care providers are named in *Hallworth*. And, Dr. Getachew, who is named here, defended the suit against Wexford in *Pierce*. As noted, he submitted a Declaration reviewing plaintiff's ailments. Similarly, the defendants in this case assert the same defense and rely on the same or similar facts to do so. Although the two defendants sued in *Pierce* are not precisely the same as the defendants named in the instant suit, the parties need not be identical for res judicata to apply. *Providence Hall Associates Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 282 (4th Cir. 2016). In my view, there is privity between the defendants sued in *Pierce* and the Wexford Defendants who are sued in *Hallworth*.

The Wexford Defendants have provided a concise summary of previous litigation filed by Aurel, indicating the nature of his medical allegations and the case in which each claim was

raised.  ECF 22-2 at 4-5.  They also demonstrate the relationship of various health care providers who have been sued by Aurel for purposes of privity.  *Id.* at 8.  And, they argue that res judicata precludes litigation of all claims against the Wexford Defendants, asserting that although "some of the named defendants are not repeated," they are "all in privity with each other."  *Id.* at 7.

The Wexford Defendants cite to cases dating to 2015, without indicating how the nature of the claim, aside from a bare label of the medical condition, contains the same allegations or pertains to the same action on the part of the defendants in the instant case.  *Id.* at 4-5.  But, there is insufficient information on this record to rule that *all* claims addressed in the long history of prior litigation with Aurel should be dismissed in this action based on res judicata.

However, as to the claims recently at issue in *Pierce*, an extensive record was presented in that matter and considered by the Court.  Aurel has failed to provide sufficient facts supporting a claim that his medical claims in this action differ from those in *Pierce* with respect to the named defendants here, who were parties or in privity.  Therefore, to the extent that the medical claims adjudicated in *Pierce* are identical to those asserted here, those particular claims are barred by res judicata.

As to plaintiff's claims concerning hypertrophy of the prostate and the provision of medication, res judicata does not apply.  Similarly, Aurel's allegations that defendants destroyed and ignored sick call slips are not barred by res judicata, and will be considered as part of his Eighth Amendment claim of deliberate indifference.

In this regard, and alternatively, I note that, even if res judicata does not apply as to *Hallworth*, I reach the same result for the Wexford Defendants as I reach for the Corizon Defendants, discussed *infra*:  there is no viable Eighth Amendment claim.

**C.**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  It protects the rights of convicted prisoners.  *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)).  And, "[i]t is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'"  *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. Sept. 4, 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates."  *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer*, 511 U.S. 834; *Wilson*, 501 U.S. at 303; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

Moreover, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor,* 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Gordon*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. As the *Heyer* Court put it, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and

that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10.

The subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see Farmer*, 511 U.S. at 839-40; *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of Mount Ranier,* 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge.  And, the plaintiff can rely on circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842); *see also Gordon,* 937 F.3d at 357; *Scinto*, 841 F.3d at 225.

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury.  Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[6]

The Supreme Court recognized in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844; *accord Brown*, 240 F.3d at 390-91.  The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]"  *Farmer*, 511 U.S. at 845 (citations and quotation marks omitted).  Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*,

_____

6 The Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Brown*, 240 F.3d at 390-91.

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."). Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.  But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).  Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems.  *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W . Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011).  And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

When viewing the evidence as a whole, and in the light most favorable to Aurel, no evidence exists that the conduct alleged amounted to deliberate indifference by the named medical providers.  *See Estelle*, 429 U.S. at 105-06 (holding that an inadvertent failure to provide adequate medical care does not amount to deliberate indifference).  Plaintiff receives regularly scheduled chronic care, is assessed by medical specialists, including for gastrointestinal and neurological conditions, and receives regular lab work, CT scans, and other diagnostic testing. Indeed, the medical records reflect that plaintiff has received extensive medical care.

To the extent that Aurel alleges that defendants did not provide medication or treatment, Aurel fails to present an Eighth Amendment claim. At most, Aurel has alleged limited circumstances when he has not received medications. As to the additional pain medication Aurel

has requested, Tylenol #3 and Baclofen, defendants relied on medical judgment that these medications were not warranted, in part, because of Aurel's history with medication noncompliance with other prescribed medications for the same conditions. ECF 30-5, ¶¶ 8, 19, 20, 22(c); ECF 30-6, ¶ 20.  "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970)).

In sum, Aurel's medical condition has been closely monitored by defendants. Additionally, Aurel's generalized allegations that defendants destroyed or ignored his sick call slips do not alter the Court's deliberate indifference analysis, as it is belied by extensive documentation of the medical care received by Aurel.

## V.    Injunctive Relief

Aurel's request for injunctive relief is also denied insofar as all claims are being dismissed.  A preliminary injunction is an extraordinary and drastic remedy.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  A party seeking a preliminary injunction bears the burden of demonstrating: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009).  As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).  In the prison context, courts should grant preliminary injunctive relief involving the management of

correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

As previously discussed, Aurel has failed to demonstrate the likelihood of success on the merits and for this reason alone his request for injunctive relief fails. Moreover, Aurel has not demonstrated that he is likely to suffer irreparable harm or that the balance of equities tips in his favor. Thus, Aurel's request for injunctive relief is denied.

## VI. Conclusion

For the foregoing reasons, the suit shall be dismissed as to defendants Vanmol, Fields, the NBCI Nurses, Hallworth, and Beeman. The remaining claims are construed in the context of summary judgment. And, I shall grant summary judgment in favor of Corizon, Getachew, and Pierce. Aurel's motion for a temporary restraining order is denied.

A separate Order follows.


Date:   September 10, 2020                        _____/s/_____
                                                 Ellen L. Hollander
                                                 United States District Judge

38